## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

UNITED STATES OF AMERICA          )
                                  )
v.                                )          Criminal No. 3:17CR44–HEH
                                  )
MICHAEL C. HILLIARD,              )
                                  )
          Petitioner.             )

### MEMORANDUM OPINION
### (Denying 28 U.S.C. § 2255 Motion)

Michael C. Hilliard, a federal inmate proceeding *pro se*, submitted this motion

under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion,"

ECF No. 41).[1]  The Government has filed a Motion to Dismiss, asserting that Hilliard's

§ 2255 Motion is barred by the statute of limitations.  (ECF No. 44.)   Hilliard has filed a

Response (ECF No. 51) and a Memorandum of Law in Support of Granting Petitioner

Equitable Tolling ("Memorandum," ECF No. 52).  For the reasons set forth below, the

Motion to Dismiss will be granted[2] and Hilliard's § 2255 Motion will be denied as barred

by the statute of limitations.[3]

---

[1] The Court employs the pagination assigned to Hilliard's submissions by the CM/ECF docketing system.   The Court corrects the capitalization and punctuation in quotations from Hilliard's submissions.

[2] The Government's calculation of dates in its timeliness analysis are incorrect.  However, the conclusion that Hilliard's § 2255 Motion is untimely is correct.

[3] Hilliard also filed two Motions to Amend (ECF Nos. 53, 57) seeking to add a claim pursuant to *Rehaif v. United States*, 139 S. Ct. 2191 (2019).

## I. PROCEDURAL HISTORY

On May 2, 2017, a grand jury charged Hilliard with one count of possession of a firearm by convicted felon in violation of 18 U.S.C. § 922(g)(1) ("Count One"). (ECF No. 9 at 1.) On June 13, 2017, Hilliard pled guilty to Count One without a plea agreement. (ECF No. 13.) On September 13, 2017, the Court entered judgment against Hilliard and sentenced him to a total of 90 months of incarceration. (ECF No. 25 at 2.) Hilliard appealed. On May 25, 2018, the United States Court of Appeals for the Fourth Circuit affirmed the decision of this Court. (ECF No. 37.)

On September 12, 2019, Hilliard filed the present § 2255 Motion.[4] In the § 2255 Motion, the Court construes Hilliard to raise the following claims for relief:

> Claim One: Counsel rendered ineffective assistance because Hilliard's Fourth Amendment rights were violated during the traffic stop. (ECF No. 41 at 4.)
>
> Claim Two: Counsel rendered ineffective assistance when she failed to file a motion to suppress. (*Id.*)
>
> Claim Three: Counsel rendered ineffective assistance by allowing Hilliard to plead guilty without an "adversarial testing." (ECF No. 42 at 13; *see* ECF No. 41 at 4.)

As discussed below, Hilliard's claims and his § 2255 Motion are untimely.

---

[4] Hilliard indicated on his § 2255 Motion that he placed it in the prison mailing system on August 9, 2019. (*See* ECF No. 41 at 12.) However, Hilliard himself indicates that date is not correct, and that he mailed it in September. (*See* ECF No. 51 at 4.) September 12, 2019 is the date that the § 2255 Motion is postmarked (*see id.* at 13), and the Court will use that date as the filed date. *Cf. Houston v. Lack*, 487 U.S. 266, 276 (1988).

## III. ANALYSIS

Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA")

amended 28 U.S.C. § 2255 to establish a one-year period of limitation for the filing of a

§ 2255 Motion.  Specifically, 28 U.S.C. § 2255(f) now reads:

> **(f)**   A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of—
> **(1)**   the date on which the judgment of conviction becomes final;
> **(2)**   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> **(3)**   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> **(4)**   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

### A.   28 U.S.C. § 2255(f)(1)

The Fourth Circuit affirmed the judgment of this Court on May 25, 2018, and

Hilliard did not file a petition for a writ of certiorari with the Supreme Court of the

United States.  Thus, his conviction became final on Thursday, August 23, 2018.  *See*

*Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality attaches when t[he] [Supreme]

Court affirms a conviction on the merits on direct review or denies a petition for a writ of

certiorari, or when the time for filing a certiorari petition expires.").  Hilliard had one

year, or until Friday, August 23, 2019, in which to file his § 2255 motion.  Hilliard failed

3

to file his § 2255 Motion until September 12, 2019, and his § 2255 Motion is untimely unless he demonstrates some basis for a belated commencement of the limitation period or some equitable basis for avoiding the limitation period. As explained in greater detail below, Hilliard argues that he is entitled to equitable tolling.[5]

### B.   Equitable Tolling

Motions pursuant to § 2255 are subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645–46 (2010). The Supreme Court has "made clear that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). An inmate asserting equitable tolling "bears a strong burden to show specific facts" that demonstrate he fulfills both elements of the test. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008)). To make the requisite showing of diligence, the petitioner "must allege *with specificity* the steps he took to diligently pursue his federal claims." *Id.* at 929–30 (10th Cir. 2008) (emphasis added).[6]

---

[5] Neither Hilliard nor the record suggests any plausible basis for belated commencement under 28 U.S.C. § 2244(d)(1)(B)–(D). Accordingly, the Court need not address these provisions.

[6] As explained more fully below, the diligence detailed by the petitioner in *Holland* stands in marked contrast to Hilliard's allegations here. *See* 560 U.S. 635–44. Holland provided the courts with a detailed description of his efforts to pursue habeas relief. *See id.* From that description, the Supreme Court was able to conclude that Holland acted with sufficient diligence because:

> Holland not only wrote his attorney numerous letters seeking crucial information
> and providing direction; he also repeatedly contacted the state courts, their clerks,

4

In his Response and Memorandum, Hilliard argues that he is entitled to equitable

tolling based on the following argument:

> After my direct appeal was denied in 2018, I immediately began studying and researching the law. I have little formal education and have absolutely no experience in the law. It was difficult for me to understand things at times, but gradually I learned. During this time (back in 2018), I discovered, and researched, the grounds for my instant motion.
>
> I immediately knew that my attorney made a grave mistake when he never subjected the Government's evidence to examination at a suppression hearing. I easily identified the situation as an illegal search and seizure in violation of my Fourth Amendment constitutional rights. Right away, I began drafting my petition and I had it completed by late spring/early summer 2019. I typed up my final draft and had copies made. I then put in repeated requests to have my documents notarized. I must have made a government employee mad at me.
>
> On August 8, 2019, I was taken out of the general population at USP Hazelton and placed in the Special Housing Unit. I did not do anything wrong and committed no rule infraction. . . . In "special housing" you have absolutely no access to your personal property, legal materials, or law library. It is nearly impossible to get anything productive accomplished in the SHU.
>
> After arriving in the SHU, I did think to mail something to this Court explaining my predicament and requesting a small amount of additional time to file my petition. My "request for an extension of time" was in the form of a letter, written on a wrinkly piece of lined paper. I wrote it with a flexible safety pencil which resulted in the penmanship being very light. This letter/request should be noted on my docket sheet.
>
> If this Court never received that letter please do not hold it against me. . . . There have been a lot of complaints, especially in SHU that guards just throw our mail in the trash. . . .
>
> I was ultimately released for the Special Housing Unit on August 29, 2019, which was four (4) days after the deadline for my filing. . . . When they gave me my property back, I immediately discovered that my actual, completed motion was missing. . . .

---

and the Florida State Bar Association in an effort to have Collins—the central impediment to the pursuit of his legal remedy—removed from his case. And, the *very day* that Holland discovered that his AEDPA clock had expired due to Collins' failings, Holland prepared his own habeas petition *pro se* and promptly filed it with the District Court.

*Id.* at 653.

. . . .

       I quickly put something back together to send this Court.  This would
be the instant, unpolished petition that was filed in September 2019.  I
apologize for the inconvenience, but the Federal Bureau of Prisons directly
contributed to my late filing and it was completely out of my control.
       I asserted in my § 2255 that it was in fact timely because I never
received a response from this Court as to my "request for extension of time."
I just went ahead and filed my motion as soon as I could.  I believed it would
be approximately one (1) week late, so I just assumed it would definitely be
filed before any new deadline that this Court imposed. . . .

(ECF No. 51 at 3–4.)  In essence, Hilliard blames every facet of his incarceration for his

tardy filing.  As explained more fully below, Hilliard's arguments fail to demonstrate any

extraordinary circumstance that prevented him from filing his § 2255 Motion in a timely

fashion.  Instead, the record shows that Hilliard's lack of diligence, rather than the

circumstances of his incarceration, led to the delay in filing his § 2255 Motion.

### 1.     May 28, 2018 through Late Spring/Early Summer of 2019

     The Fourth Circuit denied Hilliard's appeal on May 25, 2018.  Hilliard contends

that he "immediately began studying and researching the law," and that he "immediately

knew that my attorney made a grave mistake when he never subjected the government's

evidence to examination at a suppression hearing." (ECF No. 51 at 2–3.)  Hilliard also

indicates that he "easily identified the situation as an illegal search and seizure." (*Id.* at

3.)  Hilliard contends that "right away, [he] began drafting my petition and I had it

completed by late spring/early summer 2019." (*Id.* at 3.)  Although Hilliard, in essence,

argues that he knew little of the law, this fails to constitute an extraordinary circumstance.

Rather, "ignorance of the law is not a basis for equitable tolling." *United States v. Sosa*,

364 F.3d 507, 512 (4th Cir. 2004) (citations omitted).  Hilliard fails to show any

6

extraordinary circumstances prevented him from filing between May 25, 2018, and "late spring/early summer 2019."

Hilliard also fails to adequately explain how he was diligently pursuing his rights between May 25, 2018, and "late spring/early summer 2019" when he had completed his § 2255 Motion. (ECF No. 51 at 3.) If Hilliard "immediately" knew of the errors, as he alleges, and he identified the issues "easily," he fails to demonstrate why he could not have filed his § 2255 Motion during the year that elapsed after his appeal was dismissed. *Cf. Hardy v. O'Brien*, No. 3:09CV193–HEH, 2010 WL 724022, *3 (E.D. Va. Mar. 2, 2010) (explaining that a petitioner's "languid pursuit of his claims . . . precludes a finding of diligence" (citing *Pace*, 544 U.S. at 419)). Thus, Hilliard fails to demonstrate that he was diligently pursuing his rights, between May 25, 2018, and "late spring/early summer 2019," and he lacks entitlement to equitable tolling for this period.

### 2. Lack of Notary (Late Spring/Early Summer of 2019 Until August 8, 2019)

Hilliard indicates that he finished drafting his § 2255 Motion in "late spring/early summer 2019," and he "put in repeated requests to have my documents notarized." (ECF No. 51 at 3.) Although completed months before, Hilliard had not mailed his § 2255 Motion as of August 8, 2019, when he was placed in the SHU. As a preliminary matter, Hilliard was not required to have his § 2255 Motion notarized. Perhaps tellingly, the § 2255 Motion Hilliard eventually submitted does not bear notary stamp. (*See* ECF No. 41 at 12.) Rather, the form for filing a § 2255 motion merely requires the individual submitting the motion to sign under penalty of perjury, and nothing on the form states

7

anything about a notary. (*See id.*)  Accordingly, Hilliard could have submitted his § 2255 Motion in "late/spring early summer 2019" well before he placed in the SHU.  Thus, a lack of notary is not an extraordinary circumstance that stood in the way of him filing his § 2255 Motion. *See Sosa*, 364 F.3d at 512 (observing that "ignorance of the law is not a basis for equitable tolling" (citations omitted)).

Moreover, Hilliard fails to demonstrate that he was diligently pursuing his rights during this period in the summer of 2019.  Hilliard's statement that he put in repeated requests for a notary, without more, is too conclusory to show the requisite diligence. *See Yang*, 525 F.3d at 929–30.  Accordingly, Hilliard lacks entitlement to an equitable tolling of the limitations period during this time.

### 3.      Being Housed in SHU (August 8, 2019 through August 29, 2019)

On August 8, 2019 through August 29, 2019, Hilliard was housed in the SHU.  To be timely, Hilliard's § 2255 motion was required to have been filed by August 23, 2019, six days before he was released into general population.  Hillard fails to demonstrate that extraordinary circumstances prevented him from filing on time while he was housed in the SHU.

At most, Hilliard contends that, while in the SHU, "you have absolutely no access to your personal property, legal materials, or law library." (ECF No. 51 at 3.)  Thus, without any factual detail as to why, Hilliard seemingly suggests that being housed in the SHU simply excuses any filing deadline.  However, generally, "'[t]ransfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances.'"

*Allen v. Johnson*, 602 F. Supp. 2d 724, 727–28 (E.D. Va. 2009) (footnote omitted)

(quoting *Warren v. Kelly*, 207 F. Supp. 2d 6, 10 (E.D.N.Y. 2002)).  Accordingly, the

mere fact that Hilliard was housed in the SHU, standing alone, is not an extraordinary

circumstance.  Moreover, to the extent that Hilliard argues that he did not have access to

his legal papers, he fails to demonstrate—as he must—that the temporary lack of access

to his legal papers prevented him from complying with the statute of limitations.

*Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).  "The word 'prevent' requires the

petitioner to demonstrate a causal relationship between the extraordinary circumstances

on which the claim for equitable tolling rests and the lateness of his filing, a

demonstration that cannot be made if the petitioner, acting with reasonable diligence,

could have filed on time notwithstanding the extraordinary circumstances." *Id.* (citing

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Fisher v. Johnson*, 174 F.3d

710, 716 (5th Cir. 1999)).  On the facts alleged, Hilliard fails to demonstrate that being

housed in the SHU was extraordinary circumstance.

With respect to the diligence aspect, at most, Hilliard states that while he was

housed in the SHU, he drafted a motion for an extension of time to send to the Court.

(ECF No. 51 at 4.)  That motion was not received by the Court, nor would the Court have

been permitted to extend the time period for filing a § 2255 Motion.[7]  However, Hilliard

---

[7] Federal courts lack jurisdiction to consider the timeliness of a § 2255 motion until it is actually filed.  *Gregory v. Bassett*, No. 3:07cv790, 2009 WL 455267, at *2 (E.D. Va. Feb. 23, 2009) (citations omitted); *see United States v. White*, 257 F. App'x 608, 609 (4th Cir. 2007) (holding that no case or controversy existed before § 2255 motion was actually filed (citing *United States v. Leon*, 203 F.3d 162, 164 (2d Cir. 2000))).  Therefore, any motion for extension of time would have been denied.  *See Ramirez v. United States*, 461 F. Supp. 2d 439, 440–41 (E.D. Va. 2006)

fails to outline any action, much less specific actions, he took during that time period to have his already completed § 2255 Motion mailed to the Court. *See Yang*, 525 F.3d at 929–30.[8] The mere fact that he was housed in the SHU did not excuse Hilliard of the requirement that he must diligently pursue his rights. Hilliard fails to establish that he diligently pursued his rights from August 8, 2019, until August 23, 2019, the last day on which he could have timely filed his § 2255 motion. Accordingly, Hilliard lacks entitlement to an equitable tolling of the limitations period during this time.

"Simply put, [Hilliard] fails to demonstrate some external impediment, rather than his own lack of diligence, prevented him from filing a habeas petition in a timely fashion." *O'Neill v. Dir., Va. Dep't of Corr.*, No. 3:10CV157, 2011 WL 3489624, at *6 (E.D. Va. Aug. 9, 2011). Thus, Hilliard fails to demonstrate that he is entitled to equitable tolling, and his § 2255 Motion is barred by the statute of limitations.[9]

---

(citations omitted). Hilliard's ignorance of this fact fails to absolve him of the need to timely file his § 2255 motion. *See Sosa*, 364 F.3d at 512.

[8] Even if the Court were to consider Hilliard's alleged attempt to file a motion for an extension of time in the diligence inquiry, Hilliard fails to provide any facts about his attempt to obtain an extension with the requisite specificity to obtain equitable tolling. For this Court to have jurisdiction over such a motion, the motion for an extension was required to be filed concurrently with the § 2255 motion or contain allegations sufficient to state a claim under § 2255. *See Ramirez*, 461 F. Supp. 2d at 441. Clearly, Hilliard's alleged motion for an extension was not accompanied by a § 2255 motion. Based on Hilliard's cursory description of his motion for an extension, the Court also doubts it contained any claims for relief. Moreover, Hilliard failed to identify the date he drafted the alleged motion, or if he ever attempted to follow up with the Court about whether it was granted.

[9] Although Hilliard also contends that he is entitled to equitable tolling after August 29, 2019, because he discovered that the institution had lost his § 2255 Motion, and because he believed the Court would grant him an extension, the limitation period had already expired on August 23, 2019. As discussed above, Hillard is not entitled to an equitable extension of that deadline because he failed to diligently pursue his rights prior to the expiration of the limitation period. Accordingly, these remaining arguments cannot make his § 2255 Motion timely.

## IV.   OUTSTANDING MOTIONS

### A.   Motions to Amend

Hilliard filed two Motions to Amend after the Government filed the Motion to Dismiss. (ECF Nos. 53, 57.) Hilliard seeks permission to add the following claim for relief:

Claim Four:   Hilliard's conviction for 18 U.S.C. § 922(g) is no longer valid in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019).

The Court directed the Government to respond to the Motions to Amend. In response, the Government concedes that *Rehaif* applies retroactively to cases on collateral review, but argues that, Hilliard procedurally defaulted any challenge to his conviction based on *Rehaif*. (ECF No. 59 at 5.)[10] As discussed below, the Court will deny the Motions to Amend as futile because Hilliard defaulted this claim and it is barred from review here.

### 1.   Rule 15

Federal Rule of Civil Procedure 15(a) provides that after a responsive pleading is served, a party seeking to amend the original pleading must seek either written consent of the opposing party or leave of the court. FED. R. CIV. P. 15(a)(2). "[L]eave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." *United States v Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) (citations

---

[10] The Fourth Circuit has not addressed the retroactivity of *Rehaif*. At least two circuit courts have found that *Rehaif* is merely a case of statutory interpretation, and it did not establish a new rule of constitutional law. *See Khamisi-El v. United States*, 800 F. App'x 344, 349 (6th Cir. 2020); *In re Palacios*, 931 F.3d 1314, 1315 (11th Cir. 2019). Nevertheless, because the Government concedes its retroactivity, for the purposes of this opinion, the Court will accept that *Rehaif* applies retroactively to cases on collateral review.

omitted). As explained below, the Motions to Amend will be denied because of the new claim's futility.

### 2.   *Rehaif* Challenge

Under 18 U.S.C. § 922(g)(1), it is unlawful for a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. A separate provision, 18 U.S.C. § 924(a)(2), requires that anyone who "knowingly violates" § 922(g)(1) shall be fined or imprisoned for up to 10 years. In *Rehaif*, the Supreme Court determined that § 922(g) does not criminalize a defendant's "innocent mistake," and therefore, a conviction under § 922(g) requires "knowledge of [the] status" that renders firearm possession unlawful. 139 S. Ct. at 2197. Accordingly, *Rehaif* held that, "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm *and that he knew* he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200 (emphasis added).[11]

---

[11] In *Rehaif*, a jury convicted the defendant of being an alien unlawfully in the United States in possession of firearms in violation of § 924(g)(5) and § 924(a)(2). 139 S. Ct. at 2194. As explained by the Supreme Court:

> Petitioner Hamid Rehaif entered the United States on a nonimmigrant student visa to attend university. After he received poor grades, the university dismissed him and told him that his "'immigration status'" would be terminated unless he transferred to a different university or left the country. Rehaif did neither.
> Rehaif subsequently visited a firing range, where he shot two firearms. The Government learned about his target practice and prosecuted him for possessing firearms as an alien unlawfully in the United States . . . .

*Id.* at 2194 (internal citations omitted). During his trial, Rehaif objected to the jury instruction "that the 'United States is not required to prove' that Rehaif 'knew he was illegally or unlawfully in the United States,'" at the time he possessed the firearm. *Id.* (citation omitted). The district

Relying on this holding, Hilliard argues that he "wasn't informed that the Government had to prove knowledge of prohibited status, nor did the Government prove or attempt to prove knowledge of prohibited status." (ECF No. 53 at 1–2.)  Although not explicitly stated, Hilliard presumably argues that the Court failed to inform him of two essential elements of the offense:  first, that he knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year; and second, that he knew that such a conviction gave him the status of being prohibited from legally possessing a firearm.  Hilliard also contends that the Government bore the burden under *Rehaif* to prove that, at the time he possessed the firearm, Hilliard knew that he had been previously convicted of a crime punishable by a term of imprisonment exceeding one year.  Hilliard seemingly suggests that, because he was unaware of these elements of the § 922(g) offense, his plea was not knowing and voluntary, and his conviction must be vacated.[12]  However, as discussed below, Claim Four is procedurally defaulted, and barred from review here.

---

ourt overruled the objection, the jury found him guilty, and Rehaif was sentenced to 18 months of incarceration. *Id.* The Eleventh Circuit affirmed his conviction and sentence. *Id.* at 2195. The Supreme Court reversed, holding that:  "To convict a defendant, the Government . . . must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id.* at 2194.

[12] Hilliard does not specifically argue that *Rehaif* requires that the Government must also prove that he knew his conviction for a crime punishable by a term of imprisonment exceeding one year accorded him a status barring him from legally possessing a firearm.  However, to the extent that he had, that contention lacks merit. *Rehaif* does not require the Government to prove that Hilliard knew his possession of a firearm was unlawful in addition to proving that he "knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *See* 139 S. Ct. at 2194.  To the contrary, "the scope of a defendant's knowledge as required by *Rehaif* does not extend beyond the defendant's relevant status (that he was a felon . . . )." *United States v. Jackson*, No. 3:17–810–CMC, 2021 WL 694848, at *8 (D.S.C. Feb. 23, 2021) (quoting

### 3.    Hilliard Fails to Demonstrate Actual Prejudice

Hilliard clearly did not raise his *Rehaif* claim during his criminal proceedings in this Court or on direct review.  The Government correctly asserts that, absent a showing of cause and prejudice or actual innocence, Claim Four is barred from review here because Hilliard could have raised—but did not—this claim on direct appeal.  *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998); *see also United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009) (internal quotation marks omitted) (citation omitted) (explaining that a petitioner who waives the right to appeal "is not precluded from filing a petition for collateral review.  But he is precluded from raising claims that are the sort that *could have* been raised on appeal.").  The Court doubts that Hilliard has demonstrated any cause for the default.[13]  However, the Court need not determine

---

*Rehaif*, 139 S. Ct. at 2194).  Although the Fourth Circuit has not weighed in on this argument, four circuit courts have agreed that, after *Rehaif*, "the Government must prove only that [the defendant] knew, at the time he possessed the firearm, that he belonged to one of the prohibited status groups enumerated in § 922(g)," *United States v. Singh*, 979 F.3d 697, 728 (9th Cir. 2020), —not that "he knew his status prohibited him from owning a firearm." *Id.* at 727; *see also United States v. Maez*, 960 F.3d 949, 945–55 (7th Cir. 2020), *petition for cert. filed*, No. 20-6226, (U.S. Oct. 28, 2020); *United States v. Robinson*, 982 F.3d 1181, 1187 (8th Cir. 2020); *United States v. Bowens*, 938 F.3d 790, 797 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 2572 (2020); 140 S. Ct. 814 (2020).

[13] "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *United States v. Mikalajunus*, 186 F.3d 490, 494 (4th Cir. 1999).  A change in the law may constitute cause for a procedural default if it creates "a claim that 'is so novel that its legal basis is not reasonably available to counsel.'" *Id.* (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)).  Several courts have found that a *Rehaif*-type challenge to § 922(g) convictions was available long before *Rehaif* was decided; thus, this claim is likely not so novel as to establish cause for Hilliard's procedural default.  *See United States v. Claytor*, Nos. 7:15CR00070, 7:20CV81427, 2021 WL 62272, at *3 (W.D. Va. Jan. 7, 2021) (explaining that "[s]everal district courts in this Circuit . . . have rejected the novelty argument" of a *Rehaif* claim (citations omitted)).  Moreover, any alleged ineffective assistance of counsel also fails to serve as the cause for the default of Hilliard's *Rehaif* claim, because, at the time of Hilliard's 2017 plea hearing, controlling Fourth

14

whether Hilliard has shown cause because he clearly suffered no actual prejudice. *See United States v. Frady*, 456 U.S. 152, 167 (1982).

To demonstrate prejudice, Hilliard must show "a reasonable probability that, but for [the alleged] errors, he would have not pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004) (explaining that defendant can only establish a Rule 11 error affected his substantial rights by "show[ing] a reasonable probability that, but for the error [at his plea hearing], he would not have entered the plea"). Notably, Hilliard does not argue that, but for the *Rehaif* error, he would have pled not guilty and insisted on proceeding to trial. For this reason alone, Hilliard has failed to meet his burden of establishing actual prejudice.

Moreover, the undisputed evidence establishes that the Government would have easily demonstrated that Hilliard was aware of his prohibited status. As the Court inferred in *Rehaif*, the Government's obligation to prove a defendant's knowledge of his status as convicted felon is hardly "burdensome," because "knowledge [of status] can be

---

Circuit precedent held that a defendant's knowledge of his relevant status was not an element of an offense under § 922(g)(1) and §924(a)(2). *See United States v. Langley*, 62 F.3d 602, 604–08 (4th Cir. 1995). Hilliard's counsel would have had to anticipate a change in the controlling law to have raised a *Rehaif*-type claim on direct review. However, counsel's failure to recognize a change in the controlling law does not constitute deficient performance under *Strickland*. *United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019) (citations omitted); *see Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995). Thus, Hilliard fails to demonstrate that counsel was deficient for failing to raise this claim on direct review, and the ineffective assistance of counsel cannot serve as the cause for the default of his *Rehaif* claim. *See United States v. Finley*, 805 F. App'x 823, 827 (11th Cir. 2020) (rejecting an ineffective assistance of counsel claim when current law foreclosed *Rehaif*-based objection).

inferred from circumstantial evidence." 139 S. Ct. at 2198 (quoting *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)); *see United States v. Lavalais*, 960 F.3d 180, 184 (5th Cir. 2020) ("Demonstrating prejudice under *Rehaif* will be difficult for most convicted felons for one simple reason: Convicted felons typically know they're convicted felons. And they know the Government would have little trouble proving that they knew."), *petition for cert. filed*, No. 20–5489 (U.S. Aug. 25, 2020).

In *Rehaif*, the Supreme Court addressed "what it means for a defendant to know he has 'violate[d]' 922(g)." 139 S. Ct. at 2195. The Supreme Court set forth four elements that makes possession of a firearm or ammunition unlawful: "(1) a status element (in this case, [being a felon with a sentence of imprisonment of more than one year]); (2) a possession element (to 'possess'); (3) a jurisdictional element ('in or affecting commerce'); and (4) a firearm element (a 'firearm or ammunition')." *Id.* at 2195–96. Only element (1) is at issue in the present case: whether Hilliard was aware that he was a felon with a sentence of more than a year at the time he possessed the firearm. Overwhelming evidence reflects that Hilliard knew of his felon status at the time of the firearm offense. and the Government easily would have proven that fact if he had insisted on proceeding to trial.

In his Statement of Facts, Hilliard agreed that, "having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly and unlawfully possess a firearm, to wit: a Cobray M-12, .380 caliber semi-automatic handgun, in and affecting interstate and foreign commerce." (ECF No. 14 ¶ 1.) Hilliard also admitted that "[p]rior to December 22, 2016, HILLIARD has been convicted of a

16

crime punishable by more than one-year imprisonment." (*Id.* ¶ 7.) The Presentence

Report reflected that, in 2010, Hilliard was convicted of Possession of Cocaine with

Intent to Distribute and received a 10-year sentence with 9 years and 6 months

suspended. (ECF No. 17 ¶ 27.) On January 24, 2011, Hilliard signed an agreement with

respect to his probation period following his felony drug conviction, entitled "Conditions

of Probation Supervision." (ECF No. 58–1 at 1.) In that agreement, Hilliard explicitly

agreed, as reflected by his signature on the document, that he knew that he had received a

sentence of ten years on his drug conviction with nine years and six months suspended.

(*See id.*) Therefore, as of December 22, 2016, Hilliard knew that he had been convicted

of "a crime punishable by imprisonment for a term exceeding one year" as required by

§ 922(g)(1). In that same document, Hilliard agreed, as reflected by his signature, that he

would "not use, own, possess, transport or carry a firearm." (*Id.*) Thus, Hilliard clearly

knew that he was not permitted to possess a firearm by the clear terms of his probation.

Also, on January 24, 2011, Hilliard signed a document that stated:

TO: Anyone convicted of a felony on probation, parole, and/or post release supervision

SUBJECT: Possession of Firearms and/or Ammunition

The provisions of the Gun Control Act of 1968, 18 U.S.C. 922 and 18 U.S.C. 2012– Appendix, relate to any person who has been convicted of a crime, punishable by imprisonment, for a term exceeding one year, whether or not such sentence was imposed or served. Under these provisions, no probationer or parolee may purchase, carry, own or possess firearms or ammunition.

The above information is called to your attention so that you will not unknowingly or knowingly violate federal law.

17

> I hereby acknowledge that the above was read by me, or to me. I thoroughly understand that I cannot purchase, carry, own or possess firearms or ammunition, unless I have received proper relief through the provisions of the Gun Control Act of 1968 . . . . I also understand that this relief cannot be obtained while I am under supervision.

(ECF No. 58–2 at 1.) Again, this document demonstrates that Hilliard was aware of his status as an individual who had been convicted of a crime punishable by imprisonment exceeding one year and that because of that status, he was not permitted to "purchase, carry, own or possess firearms." (*Id.*) Moreover, at the time of his December 22, 2016 arrest for the present federal charge, Hilliard's supervision had been revoked four times, resulting in additional prison time beyond the initial six months imposed. Hilliard also remained on supervised release at that time for his state drug charge and various other state offenses.[14]

Under *Rehaif*, the Government must prove "both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. The record establishes that Hilliard knew of his prohibited status at the time of the federal firearm offense, and the Government would have easily met their burden to show this element if he proceeded to trial. Moreover, the record lacks any evidence suggesting that Hilliard would not have

---

[14] Notably, in 2013, Hilliard was charged with Possession of Firearm by a Nonviolent Convicted Felon. (ECF No. 17 ¶ 31.) Although he was not convicted of that count, it is certainly further evidence that Hilliard knew that he was prohibited from possessing a firearm because of his status as a felon.

pled guilty if he had known that such proof was required.[15] Thus, in sum, Hilliard has not

demonstrated that he suffered actual prejudice flowing from the *Rehaif* error in his case.

### 4.   **Actual Innocence**

Hilliard's default of Claim Four may also be excused if he demonstrates that he is

actually innocent of violating § 922(g). "To establish actual innocence, petitioner must

demonstrate that, 'in light of all the evidence, it is more likely than not that no reasonable

juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (some internal quotation

marks omitted) (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995). "'[A]ctual

innocence' means factual innocence, not mere legal insufficiency." *Id.* at 623–24 (citing

*Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). Hilliard does not argue that he is actually

innocent of violating § 922(g), and for this reason alone, the Court need not consider this

argument. Even so, as discussed above, significant record evidence demonstrates that

Hilliard was aware that he was a felon at the time he unlawfully possessed the firearm,

and the Government could have easily proven this fact had the matter gone to trial. Thus,

Hilliard is not factually innocent of the § 922(g) conviction under *Rehaif*. *See* 139 S. Ct.

at 2200 (requiring that the Government must prove "both that the defendant knew he

possessed a firearm and that he knew he belonged to the relevant category of persons

---

[15] By pleading guilty, Hilliard received a three-level reduction in his Offense Level for
acceptance of responsibility, making his sentencing guidelines range 84 to 105 months. (ECF
No. 17 ¶ 96.) If Hilliard had instead proceeded to trial, he faced a statutory sentence of up to ten
years of imprisonment and would have lost the benefit of that three-point reduction, resulting in a
restricted sentencing guidelines range of 110 to 120 months. Thus, with a certainty, Hilliard
would have received more than the 90-month sentence he received. Accordingly, no reasonable
defendant in Hilliard's position would have insisted on proceeding to trial when he almost
certainly would have been convicted and received a longer sentence.

barred from possessing a firearm."). Because Hilliard fails to show any reason to excuse the default of Claim Four, it is barred from review here. Thus, any attempt to amend his § 2255 Motion to add Claim Four is futile. Accordingly, the Motions to Amend (ECF Nos. 53, 57) will be denied.

### B.   Remaining Motions

On February 2, 2021, Hilliard filed a "Motion to Compel and Request to Hold Rehaif/Gary Claim in Abeyance." (ECF Nos. 72, 73.) The Motion to Compel seeks an order from the Court requiring the Government to respond to the merits of § 2255 Motion. (ECF No. 72 at 1.) Because Hilliard's § 2255 Motion is untimely and barred from review here, the Court declines to order the Government to file further briefing on the merits of his claims. Therefore, the Motion to Compel (ECF No. 72) will be denied.

In the motion requesting the Court to hold his "Rehaif/Gary Claim in Abeyance" (ECF No. 73), Hilliard argues that, when the United States Supreme Court rules on *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020), *cert granted*, 141 S. Ct. 974 (2021),[16] "Mr. Hilliard will be definitely entitled to a new trial" and "[it] is in all parties best interest to 'hold' this part of [his] § 2255 pending the outcome of *Gary*." (*Id.* at 2.) The Court will not grant Hilliard's request for an abeyance until the Supreme Court has

---

[16] In *Gary*, the Fourth Circuit held that the district court's failure to inform the defendant of the *Rehaif* element during a plea hearing was a "structural" error that "satisfie[d] plain error review" even without a case-specific showing of prejudice. 954 F.3d at 200, 202. *Gary* was decided in the context of a direct appeal, and the decision "says nothing about whether a § 2255 petitioner must show cause and prejudice to excuse a procedural default." *Claytor*, 2021 WL 62272, at *5 (citations omitted). Accordingly, this Court "like other district courts in the Fourth Circuit, concludes that, *Gary* does not relieve [Hilliard] of the burden of demonstrating actual prejudice to excuse his procedural default." *See id.* (citations omitted).

ruled on *Gary*, because Hilliard's underlying request to amend is futile.  Accordingly, the

Motion to hold "Rehaif/Gary Claim in Abeyance" (ECF No. 73) will be denied.

## V.  CONCLUSION

For the foregoing reasons, the Motion to Dismiss (ECF No. 44) will be granted.

Hilliard's § 2255 Motion (ECF No. 41) will be denied.  Claims One, Two, and Three will

be dismissed.  The Motions to Amend to add Claim Four (ECF Nos. 53, 57) will be

denied as futile.  The Motion to Compel (ECF No. 72) and Motion to Hold "Rehaif/Gary

Claim in Abeyance" (ECF No. 73) will be denied.

An appropriate Order shall accompany this Memorandum Opinion.

/s/

HENRY E. HUDSON
SENIOR UNITED STATES DISTRICT JUDGE

Date: June 9 2021
Richmond, Virginia